OPINION
{¶ 1} Searcy Rutledge, Jr. was found guilty by a jury of both the offense of murder and the offense of felonious assault. Docket 60 and 61. The felonious assault verdict was merged with the murder verdict by the trial court, and Rutledge was sentenced on the murder conviction to fifteen years to life confinement. Docket 63. On appeal, Rutledge brings the following sole assignment of error:
 {¶ 2} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR DENYING DEFENDANT'S RIGHT TO A FAIR TRIAL BY SUSTAINING OBJECTIONS TO A KEY WITNESS FOR THE DEFENSE CALLED TO IMPEACH THE STATE'S LEADING WITNESS AGAINST HIM. QUESTIONS WHICH WERE OFFERED TO ATTACK AND IMPEACH THE CREDIBILITY OF A WITNESS OF THE STATE."
 {¶ 3} The following summary of facts is extracted from the brief of the appellee:
 {¶ 4} "The crime in this case occurred on Saturday, April 21, 2002, at a high-rise apartment building for senior citizens with disabilities, which is located at 108 Melba Avenue, in Dayton. (Tr. 166-167, 382). The persons involved are: Searcy Rutledge, who lived in apartment 602; Sandra Robinson, Rutledge's girlfriend, who got off the freight elevator on the fifth floor, bleeding from her neck and screaming that Rutledge had cut her; Minnie Phillips, Rutledge's immediate past girlfriend, who took Robinson into her apartment after she was cut and called 911; and Loraine Day, Minnie Phillips' neighbor, who heard Robinson screaming in the hallway and who prayed with her while they waited for help to arrive. Rutledge's conviction rests on evidence that includes Robinson's dying declarations, her DNA on a bloody knife in his apartment, her DNA on the blood on the inside of the door to his apartment door, her DNA on one of the socks he was wearing that night, and his admission that he had pushed her out the door of his apartment just before she turned up the fifth floor with her throat cut."
 {¶ 5} The transcript of the trial supports the above statement of the facts. We further note that, after being advised of his constitutional rights, Rutledge told a police officer while still inside his apartment that the victim had indeed come to his apartment asking for his help to remove some furniture from a van, but he refused and pushed her out the door. He further stated that if there was any blood, then she must have gotten scratched during a tussle. Tr. 230-236. Furthermore, as the police let him out of the building, a resident testified that she heard him say "I told her, that (B) to leave me alone." (Tr. 341). The prosecuting attorney then asked if Rutledge used the full word for the "B" and the witness replied yes. (Tr. 342). Later, Rutledge said to the police during his interview at the station that the victim made him mad so he hit her in the head and shoved her out of the apartment. He claimed he did not know how the victim had gotten cut in the neck and he first denied cutting her with a knife, but then he remembered that he blacked out from time to time. (Tr. 418-419).
 {¶ 6} The evidence supporting Rutledge's sole assignment of error is a statement allegedly made by Minnie Phillips to one Queen E. Moore as Rutledge's victim was being carried out on a stretcher that "I stabbed the bitch, but the bitch ain't gonna die." (Tr. 591). This is a proffer of her testimony by Ms. Moore under examination outside the presence of the jury.
 {¶ 7} Rutledge argues that the statement was admissible under Rule 613(B) which provides:
 {¶ 8} "Extrinsic evidence of prior inconsistent statement of witnesses. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless a witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(D)(2)."
 {¶ 9} Ms. Phillips had earlier testified that she made no such statement. The trial court denied admission of this statement, even before Ms. Moore testified, as follows:
 {¶ 10} "If she is going to testify that another witness had made a statement to her that the other witness has already denied, I've reviewed, as you indicated, 613. I've also looked at any possible way that it might be admissible under 804 or 803 and I don't find any way that it — the statement would be admissible.
 {¶ 11} "I think that the statement is hearsay. There's no exception for admission of that statement. I don't know whether there's other issues that you want to address with that witness or whether you want to make a proffer of what her evidence would be, but with regard to that particular issue, I'm gonna rule that it's not admissible." Tr. 586.
 {¶ 12} We agree with Rutledge that the trial court erred in not allowing the admission of the evidence of the prior statement by Ms. Phillips, but on the facts of the case before us, we find that the error was harmless. As the appellee State points out in its brief, all the physical evidence refutes such a statement, and Ms. Phillips' account of events was also corroborated by other witnesses. Both Ms. Phillips and Ms. Robinson heard the victim scream Rutledge's name while she was bleeding profusely in the hallway from the elevator leaving Rutledge's apartment. The victim's blood was found all over Rutledge's apartment, and Rutledge himself admitted shoving the victim out of his apartment. The victim's blood was even found on a knife on Rutledge's kitchen counter and on one of the rings he was wearing when he was arrested. Thus, as appellant points out, even if the statement at issue had been admitted, and the jury therefore was led to doubt Ms. Phillips' testimony, the State could have and certainly would have obtained a verdict of guilty based upon all the other evidence that was presented to the jury. The sole assignment of error is overruled, and the judgment is affirmed.
BROGAN, J. and FAIN, J., concur.